**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SANJIV MEHRA, individually, and SAMRITA MEHRA, as trustee of the SANJIV MEHRA 2014 IRREVOCABLE TRUST, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2019-0812-KSJM |
| JONATHAN TELLER, EOS INVESTOR HOLDING COMPANY LLC, ANGRY ELEPHANT CAPITAL, LLC, ANDREW SALTOUN, as successor trustee of the Teller Children's 2015 Trust, and SARAH SLOVER, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Date Submitted: November 18, 2022
Date Decided: February 28, 2023

John L. Reed, Peter H. Kyle, Kelly L. Freund, DLA PIPER LLP, Wilmington, Delaware; Patrick J. Smith, Brian T. Burns, SMITH ZILLAZOR LLP, New York, New York; *Counsel for Plaintiffs Sanjiv Mehra and Samrita Mehra as trustee of the Sanjiv Mehra 2014 Irrevocable Trust.*

Jon E. Abramczyk, D. McKinley Measley, Alexandra Cumings, Elizabeth A. Mullin, Sebastian Van Oudenallen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Counsel for Defendants Jonathan Teller, EOS Investor Holdings Company LLC, Angry Elephant Capital, LLC, Andrew Altoun as successor trustee of the Teller Children's 2015 Trust, and Sarah Slover.*

**McCORMICK, C.**

Plaintiff Sanjiv Mehra and Defendant Jonathan Teller dispute the dissolution of EOS Investor Holding Company, LLC ("Holdco"). Before the disputed dissolution, Mehra and Teller shared control of Holdco. Although Teller held a greater equity stake in the company, Mehra took responsibility for most of the company's day-to-day management, and the two agreed that Mehra's contributions warranted granting him equal say over member and board decisions. The two also agreed that Mehra would have a right to equal distributions above a specified threshold.

The parties' agreements on shared control and equal distributions were memorialized in Holdco's LLC agreement. The LLC agreement made Teller and Mehra managers on the two-person board and required unanimity to take board action. If Teller and Mehra deadlocked, the LLC agreement provided that Holdco would be automatically dissolved. In the event of a deadlock-based dissolution, Holdco would distribute its shares of its New York subsidiary, The Kind Group LLC ("Kind"), to Holdco members in proportion to their equity stakes and the members would replicate Mehra's equal-distribution rights at the Kind level.

Deadlock arose in September 2019, and Teller dissolved Holdco. Mehra brought this suit challenging the dissolution and asserting other claims. The court bifurcated Mehra's claims challenging the dissolution. Following an expedited trial, the court issued an opinion (the "Post-Trial Opinion")[1] holding that the deadlock and resulting dissolution were valid, but that Teller failed to replicate Mehra's economic rights at the Kind level.

---

[1] C.A. No. 2019-0812-KSJM, Docket ("Dkt.") 218 ("Post-Trial Op."). All terms not defined herein shall have the same meaning as in the Post-Trial Opinion.

Teller and the other defendants have moved to dismiss Mehra's claim to economic rights at the Kind level. This decision grants in part and denies in part the motion to dismiss.

## I.     FACTUAL BACKGROUND

This decision incorporates the factual findings of the Post-Trial Opinion resolving claims concerning the validity of EOS's dissolution (the "Post-Trial Opinion").

### A.     The Post-Trial Decision Found That Teller Validly Dissolved Holdco.

Teller and Mehra held all of Holdco's membership interests directly or indirectly.[2] Teller controlled 85% and Mehra controlled 15%. Holdco held 66.3% of Kind's membership interests through its sole ownership of Kind's "Preferred Interests." Kind wholly owns EOS Products, LLC ("Products"), the operating entity. These membership interests were reflected in Holdco's operating agreement as amended in 2016 (the "Holdco LLC Agreement").

Under the Holdco LLC Agreement, Teller could not unilaterally remove Mehra as a manager or take other action on behalf of Holdco without Mehra's consent. Stated in the contrapositive, the LLC Agreement required the unanimous vote of Mehra and Teller to authorize any Holdco board action. In the event of deadlock, the sole contractual remedy was dissolution. Section 4.10 provided that "in the event the vote upon an action by the

---

[2] Teller held his membership interest in Holdco directly and indirectly through the Teller Children's 2015 Trust and Angry Elephant Capital, LLC ("Angry Elephant"), an investment vehicle owned by Teller and his mother. Mehra held his membership interest in Holdco indirectly through the Sanjiv Mehra 2014 Irrevocable Trust.

2

Board of Managers results in a deadlock, then the Board of Managers shall dissolve the Company in accordance with Article X."[3]

Tensions rose between Teller and Mehra in 2019. In September 2019, Teller declared deadlock as a predicate to dissolving Holdco and then dissolved Holdco. Defendant Sarah Slover, EOS's General Counsel and Head of Human Resources, assisted in drafting the documents that effectuated Holdco's dissolution.

### B.    The Holdco LLC Agreement

Section 4.10 of the Holdco LLC Agreement provides that, in the event of dissolution, Holdco's shares in Kind be distributed *pro rata* based on Teller and Mehra's respective membership interests in Holdco.[4] Section 4.10 also requires that the members "shall take such actions as are necessary or appropriate to give effect as members of Kind to the economic arrangements among the Members set forth in Section 7.01(a)(ii)."[5]

Section 7.01(a)(ii) of the Holdco LLC Agreement governs Mehra's distribution rights. Under this section, Teller and Mehra's respective distribution percentages were initially proportionate to their membership interests—85% and 15%, respectively.[6] Once aggregate distributions reached a threshold of $190 million (the "Threshold"), the

---

[3] Dkt. 58 ("Am. Compl."), Ex. A. ("Holdco LLC Agr.") § 4.10.

[4] Holdco LLC Agr. § 4.10.

[5] *Id.*

[6] *Id.* § 7.01(a)(ii).

3

percentages changed.[7]  Past the Threshold, the distributions would be governed by an "Equal-Distribution Arrangement" outlined in the Holdco LLC Agreement.[8]

Section 11.13 of the Holdco LLC Agreement is also relevant.  It provides that "[e]ach of the Members hereby agrees to take or cause to be taken such further actions, . . . as may be necessary or as may be reasonably requested in order to fully effectuate the purposes, terms and conditions of this Agreement."[9]

When dissolving Holdco, Teller distributed Holdco's shares in Kind *pro rata*[10] but failed to replicate Mehra's distribution rights at the Kind level.  Teller admitted at trial that he took no action to implement Mehra's economic rights at Kind.[11]

## C.    The Kind LLC Agreement

As discussed above, prior to the dissolution, Holdco owned all of Kind's Preferred Interests.  Teller, Mehra, their affiliates, and EOS employees held the remaining interest in Kind.  After the dissolution, the parties to this action owned the entirety of Kind's Preferred Interests and Teller was Kind's sole manager.

Kind is organized under the laws of New York.  Along with the Preferred Interests owned by the parties to this case, Kind has three other classes of membership interests:

---

[7] *Id.*

[8] *Id.*

[9] *Id.* § 11.13.

[10] Based on Teller and Mehra's elections, Holdco's Preferred Interests in Kind are now held by Teller, Angry Elephant, Andrew Saltoun (as successor trustee of the Teller Children's 2015 Trust), and Samrita Mehra (as trustee of the Sanjiv Mehra 2014 Irrevocable Trust).  Dkt. 268, Ex. A ("Kind Membership Interests Chart").

[11] Post-Trial Op. at 68.

Class A Common Interests, Class B Common Interests, and Class C Common Interests. Angry Elephant holds all of the Class A interests, and the Class B interests are owned by Teller, Mehra, and non-party Bion Bartning. The Class C interests are held by 14 current and former employees or consultants of EOS Products, including Slover.

Kind's Seventh Amended and Restated Limited Liability Company Agreement (the "Kind LLC Agreement") is its operative LLC agreement.[12] Article XIV governs amendments to the Kind LLC Agreement. It requires up to two levels of approval.

First, all amendments must be approved by "unanimous written consent of [Kind's] Board of Managers."[13] Teller is the sole manager of Kind.

Second, if an amendment would "treat a Restricted Member in a manner that is disproportionately adverse compared to the Restricted Members voting in favor of the amendment," then the amendment requires "the consent of the Restricted Member so affected."[14]

A "Restricted Member" is any holder of Kind's Preferred, Class A, or Class B interests.[15] As of April 25, 2022, the Restricted Members comprised Teller, Mehra, Angry Elephant, Saltoun, Samrita, and Bartning.[16] Bartning is the only Restricted Member who is not a party to this suit.

---

[12] Am. Compl., Ex. B ("Kind LLC Agr.").

[13] *Id.*, Art. XIV.

[14] *Id.*

[15] *Id.*

[16] Kind Membership Interests Chart.

5

**D.    This Litigation**

Mehra and Samrita Mehra, as trustee of a family trust in which Mehra placed Holdco interests (together, "Plaintiffs"), brought this action on October 10, 2019, and amended their claims on December 13, 2019 (the "Amended Complaint").[17]

The Amended Complaint asserts claims against Teller, Holdco, Angry Elephant, Saltoun (as successor trustee of the Teller Children's 2015 Trust), and Slover (collectively, "Defendants").  The Amended Complaint asserts four counts:

- In Count I, Plaintiffs allege breach of fiduciary duty against Teller for improperly denying their distribution rights following the dissolution and invalidly triggering the dissolution of Holdco.

- In Count II, Plaintiffs allege breach of contract against Teller for failing to follow the procedures for dissolution set forth in the Holdco LLC Agreement.

- In Count III, Plaintiffs allege aiding and abetting breach of fiduciary duty against Slover for providing Teller with legal advice necessary to execute his breaches.

- In Count IV, Plaintiffs seek declaratory judgment against all Defendants establishing Plaintiffs' membership and economic distribution rights following the dissolution.

The court expedited proceedings to resolve the threshold question of whether deadlock permitted dissolution of Holdco.[18]  In the Post-Trial Opinion, the court held that Teller had not breached his contractual or fiduciary obligations by declaring deadlock and was therefore within his right to cause dissolution.[19]

---

[17] Am. Compl.

[18] Dkt. 52.

[19] *See* Post-Trial Op. at 75 ("The court enters judgment in favor of Defendants regarding the existence of deadlock and the validity of Holdco's dissolution.").

The Post-Trial Opinion did not resolve aspects of Plaintiffs' complaint, including but not limited to Plaintiffs' Count IV, which sought declaratory judgment against all Defendants establishing Plaintiffs' membership and economic distribution rights following the dissolution. At trial, Teller acknowledged his duty under Section 4.10 to give effect to the distribution provisions after dissolution but admitted that he took no action to implement Plaintiffs' economic rights at Kind.[20]

The Post-Trial Opinion closed by ordering the parties "to confer on a path forward for litigating the remainder of Plaintiffs' claims."[21] The parties attempted to mediate their remaining disputes. They were unsuccessful.

Defendants then moved to dismiss Plaintiffs' remaining claims under Court of Chancery Rules 12(b)(6), 12(b)(2), 12(b)(4), and 12(b)(5).[22] The motions were fully briefed,[23] and the parties presented oral argument on May 31, 2022.[24]

After the matter was taken under advisement, the court requested supplemental briefing on the feasibility of the relief sought by Plaintiffs.[25] The parties submitted their

---

[20] *Id.* at 68.

[21] *Id.* at 73.

[22] Dkt. 233 ("Mot."); Dkt. 234 ("Defs.' Opening Br.").

[23] Dkt. 256 ("Pls.' Answering Br."); Dkt. 259 ("Defs. Reply Br.").

[24] Dkt. 263 (Oral Arg. Tr.).

[25] Dkt. 264 ("Letter Requesting Supp. Briefing") at 8.

supplemental briefing on these questions in a process that concluded on November 18, 2022.[26]

## II.    LEGAL ANALYSIS

The analysis proceeds in three parts.  First, the court addresses the arguments under Rule 19 that what remains of this case should be dismissed because Kind and Kind members who are not involved in this litigation are necessary and indispensable parties who cannot be joined.  Second, the court addresses the arguments under Rule 12(b)(6) that Counts I and II fail under the law of the case or as duplicative causes of action.  Third, the court addresses the arguments under Rules 12(b)(2) and 12(b)(6) that the claims against Slover and Saltoun should be dismissed for lack of personal jurisdiction and failure to state a claim.

### A.    Neither Kind Nor Absent Kind Members Are Required Parties.

Rule 19 establishes a multi-step test for determining whether absent persons are necessary or indispensable to pending litigation.  The analysis turns on three inquiries, but one is dispositive here.  As the first inquiry, the court must evaluate the criteria set forth in Rule 19(a) to determine whether an absent party is required and should be party to the litigation.[27]  Because Defendants cannot demonstrate under this criterion that Kind and the

---

[26] Dkt. 268 ("Pls.' Supp. Opening Br."); Dkt. 271 (Defs.' Supp. Answering Br."); Dkt. 274 ("Pls.' Supp. Reply Br.").

[27] Ct. Ch. R. 19; *S'holder Representative Servs. LLC v. RSI Holdco, LLC*, 2019 WL 2207452, at *4 (Del. Ch. May 22, 2019) (citing *Makitka v. New Castle Cty. Council*, 2011 WL 6880676, at *2 (Del. Ch. Dec. 23, 2011)).

absent Kind members are required parties in this action, the court does not reach the other parts of the inquiry.

Rule 19(a) established two categories of required parties to an action. The first category includes parties without which "complete relief cannot be accorded among those already parties."[28] The second category necessitates a showing that the absent party "claims an interest relating to the subject of the action[.]"[29] This second category covers only an absent party's "legally protected interest[s]" in the subject of the case; "[n]ot any abstract or vague interest will do," and a "mere[] . . . financial interest" is not enough.[30] The interest must also be "practically—not theoretically—impaired or impeded by a disposition in the person's absence," and the "impairment must be direct and immediate, not speculative."[31]

Defendants' arguments under Rule 19 focus on Plaintiffs' request for a declaration that Defendants must implement Mehra's distribution rights at the Kind level under Section 4.10 of the Holdco LLC Agreement. Defendants argue that this request for relief would have the effect of requiring that the Kind LLC Agreement be amended "regarding distributions to the Mehra Trust from Kind LLC, or with respect to the amounts of any

---

[28] Ct. Ch. R. 19(a)(1); *See Germaninvestments AG v. Allomet Corp.*, 2020 WL 6870459, at *7 (Del. Ch. Nov. 20, 2020).

[29] Ct. Ch. R. 19(a)(2).

[30] *Gov. Empls. Ins. Co. (GEICO) v. Korn*, 310 F.R.D. 125, 132 (D.N.J. 2015).

[31] *Id.* at 132 (cleaned up).

such distributions."[32] This, they say, "would necessarily affect the rights of Kind LLC (and its members)."[33]

This argument has superficial appeal. One would think that requiring amendments to the Kind LLC agreement concerning distributions from Kind would affect Kind's assets and Kind members' rights. But the appeal of Defendants' argument begins to wane once one wades into the weeds of the Kind LLC Agreement.

Viewing Plaintiffs' requested relief properly, the court can give complete relief in this case by requiring the parties to this action to amend the Kind LLC Agreement. As discussed above, Article XIV of the Kind LLC Agreement requires up to two levels of approval to amend the agreement. It provides:

> This Agreement may only be amended, modified, or waived in writing with the **[1]** prior unanimous written consent of the Board of Managers provided that **[2]** any amendment that (i) would treat a Restricted Member in a manner that is disproportionately adverse compared to the Restricted Members voting in favor of the amendment, (ii) would increase the required Capital Contributions to be made by any Restricted Member, (iii) would disproportionately reduce or limit the voting rights of a Restricted Member, or (iv) would impose restrictions in addition to the transfer restrictions set forth herein on a Restricted Member's right to transfer its Membership Interest, shall also require the consent of the Restricted Member so affected in addition to the consents required above.[34]

---

[32] Defs.' Opening Br. at 14.

[33] *Id.*

[34] Kind LLC Agr., Art. XIV.

10

Breaking it down, to effectuate an amendment, Article XIV requires the unanimous written consent of the Board of Managers in all instances. In some instances, the additional consents of Restricted Members are also required.

The first requirement is not a hurdle to granting Plaintiffs' relief—Teller is Kind's sole manager and a party to this litigation.

Of the enumerated circumstances requiring additional consents, subparts (ii) through (iv) are not implicated. Subpart (i), however, would be implicated if the proposed amendment is "disproportionately adverse" to the rights of a Restricted Member. Plaintiffs' proposed amendment would not affect the rights of Restricted Members at all, because the proposed amendment is limited to affecting the relative rights of Kind's Preferred Members so as to effectuate the Equal-Distribution Arrangement at the Kind level.

In arguing that this court can accord complete relief absent Kind and the other Kind members, Plaintiffs proposed the following amendment to implement their economic rights in the Kind LLC Agreement.[35] The most substantial amendment is to add a new section, 9.11, to Article IX:

> 9.11. Provisions to Give Effect to the Economic Arrangements among the Preferred Members as required by the Amended and Restated Limited Liability Company Agreement of EOS Investor Holding Company LLC. This section 9.11 is intended to implement the obligation under section 4.10 of the Amended and restated Limited Liability Company Agreement of EOS Investor Holding Company LLC, effective as of May 26, 2016 (the "EOS Holdco Agreement"), requiring members of EOS

---

[35] Pls.' Supp. Opening Br. at 10–12.

11

Investor Holding Company LLC ("EOS Holdco") to take such actions as are necessary or appropriate to give effect as members of the Company to the economic arrangements among the members of EOS Holdco set forth in section 7.01(a)(ii) of the EOS Holdco Agreement.

a) The term "Preferred Member Distributions" means (i) any distributions of cash or other assets of the Company to any Preferred Member listed on Exhibit A attached hereto; and (ii) any payments made by the Company or any of its Subsidiaries to any Preferred Member listed on Exhibit A as salary or pursuant to any consulting or other agreement with such Preferred Member.

b) Notwithstanding anything in this Agreement to the contrary (including in Sections 9.1, 9.2, 9.6, or 9.10), Preferred Member Distributions shall be made to the Preferred Members listed on Exhibit A in accordance with their respective revised sharing percentages as set forth in Exhibit A.

c) Calculations of Preferred Member Distributions shall be provided to the Preferred Members listed on Exhibit A within five business days of any such Preferred Member Distributions. Challenges to any calculations of Preferred Member Distributions may be made in a suit brought in accordance with Section 16.7 and shall be decided without regard to the provisions of Section 4.1.

d) The provisions of this section 9.11 and the revised sharing percentages among the Preferred Members, as listed on Exhibit A, may not be changed or amended without the advance written consent of each preferred Member affected by the change or amendment.[36]

Plaintiffs also prepared a sample Exhibit A, which captures the same distribution percentages as those after the Threshold has been met—the Equal-Distribution Arrangement:

---

[36] *Id.* at 10–11.

| Preferred Member | Number of Preferred Interests | Percentage of Preferred Interests | Revised Sharing Percentage |
|---|---|---|---|
| Jonathan Teller | 36,139,028 | 67.6832% | 39.89% |
| Angry Elephant Capital, LLC | 618,527 | 1.1584% | 0.68% |
| Andrew Saltoun, as trustee of the Teller Children's 2015 Trust | 8,543,104 | 16.0000% | 9.43% |
| Samrita Mehra, as trustee of the Sanjiv Mehra 2014 Irrevocable Trust | 8,093,743 | 15.1584% | 50% |
| **Totals** | 53,394,402 | 100.0000% | 100% |

The Plaintiffs' proposed amendment alters Section 13.4 to reflect the new Section 9.11:

> 13.4. Distribution of Assets on Dissolution – Upon the winding up of the Company, the Company's property shall be distributed in accordance with Section 9.6(b), *except that property distributed to Preferred Members shall be distributed in accordance with Section 9.11.*[37]

Taken together, these provisions implement Plaintiffs' rights at the Kind level by incorporating the Holdco LLC Agreement's definition of distributions, restyled as "Preferred Distributions," under the defined Equal-Distribution Arrangement. The proposed amendments also include safeguards against Teller unilaterally amending the Preferred Distribution percentages and ensuring that Plaintiffs are paid the Preferred Distributions they are owed even in the event of dissolution.

---

[37] *Id.* at 11 (amendments in italics).

The only persons whose rights might be affected in a way "disproportionately adverse" would be the Preferred Members themselves—those whose distributions are reduced by distributions to Mehra. All of the Preferred Members are parties to this litigation. To the extent the Kind LLC Agreement requires their vote to effectuate the amendment, then the court can order them to so vote.

There is only one Restricted Member who is not a party to this litigation—Bartning. Plaintiffs' proposed amendment would not be "disproportionately adverse" to his rights. Under the Kind LLC Agreement, the non-Preferred Restricted Members like Bartning never had an interest in distributions to the Preferred Members. Defendants do not take up the mantle on this argument. In fact, the words "Restricted Member" do not appear in any of Defendants' original or supplemental briefing.

Accordingly, the Kind LLC Agreement could be amended by the consent of Teller as manager, coupled potentially with the consents of the Preferred Members, all of whom are parties to this litigation. Because the requested Kind LLC Agreement is the only relief Plaintiffs seek, and it can be accomplished by the parties to this litigation, Rule 19 does not require dismissal.

Defendants advance a series of arguments in search of a different outcome. First, they argue that Plaintiffs' proposed Section 9.11 changes the definition of "Distributions" across the entire Kind LLC Agreement such that the amendment would impact salaries or payouts to other Kind members. This is a misstatement. Section 9.11 does not alter the definition of Distributions; rather, it creates a new definition for "Preferred Distributions," which encompasses those distributions to Preferred Members exclusively. The new

14

definition would have no impact on other members' payouts or capital accounts, and instead would only impact distributions to Teller, Angry Elephant, Saltoun, or Samrita Mehra.

Defendants next argue that the structure in Exhibit A improperly assumes that the Threshold has been met, a fact which Defendants dispute. This issue is not relevant to the motion to dismiss. The Amended Complaint alleges that the Threshold has been met, and the court must accept this allegation as true when resolving a motion to dismiss.[38]

Defendants further argue that the proposed amendment improperly includes salary payments. The inclusion is not necessarily improper. The governing definition of distribution rights in the Holdco LLC Agreement includes distributions of "(i) Available cash and (ii) any payments made by the Company or any of its Subsidiaries to any Member as salary or pursuant to any consulting or other agreement with such Member."[39] The Preferred Distributions definition implements Mehra's economic rights by mirroring the language in the Holdco LLC Agreement. In any event, whether Teller's salary payments should be included in the relevant portion of the proposed amendment does not inform the Rule 19 question concerning who constitutes necessary parties.

Defendants also contend that the proposed amendment eliminates the Kind manager's discretion in making distributions. This is untrue. Whether and how much to

---

[38] Am. Compl. ¶ 40; *Germaninvestments*, 2020 WL 6870459, at *2 (noting that, on a motion to dismiss for failure to join a necessary party, the court must "accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences in Plaintiffs' favor").

[39] Holdco LLC Agr. § 1.01.

distribute is still squarely within the Kind manager's discretion. The proposed amendment merely governs the relatively rights of the Preferred Members.

Defendants finally take the position that the amendment to Section 13.4 improperly alters distribution rights upon dissolution. Perhaps this is a live issue for debate. The parties have not yet presented facts or argument as to whether the Holdco members' distribution rights were intended to extend through dissolution of Kind. Still, it is clear that whatever relief Plaintiffs seek among the Preferred Members can be accomplished through this litigation.

In sum, the court is capable of granting complete relief in this litigation. Defendants do not expressly make arguments under Rule 19(a)(2), but those arguments would fail for the same reasons. Neither Kind nor Kind's non-Preferred Members have legally protected interests affected by the relief Plaintiffs request.

For completeness, however, it is worth noting that the only other members of Kind not yet mentioned in this decision are the Class C Common interest holders.[40] Slover is one holder of Kind Class C Common interests.[41] There are 13 other holders of Class C Common interests; all are current or former employees or consultants of EOS Products.[42] There is not a perceivable threat to the rights of Class C Common interest holders, whose rights are limited under the Kind LLC Agreement. Class C Common members cannot vote

---

[40] Kind Membership Interests Chart.

[41] *Id.*

[42] *Id.*

their interests in electing Kind's managers[43] and waive their right to inspect Kind's books and records.[44] Article XIV does not require their consents for Plaintiffs' proposed amendments.

At bottom, the proposed amendment only changes the distribution scheme for Preferred Members. Defendants assert generally that "the proposed amendment clearly changes the rights and obligations under the agreement, thereby affecting Kind LLC and its members."[45] Defendants does not identify who these other members might be or what their interest in distributions to the Preferred Members would entail. It is difficult to imagine which other members could be impacted by this amendment.

Defendants expend significant ink arguing that Plaintiffs' proposed relief would impact the legal interests of Kind, a New York LLC. This argument ignores the simple truth that the only parties who would need to act to amend the Kind LLC Agreement are the Teller-Affiliated Defendants and Samrita Mehra. All of those parties are before the court and are obligated by the Holdco LLC Agreement to take all actions necessary and appropriate to implement Mehra's economic rights even after Holdco's dissolution. Kind itself does not have a right to vote on an amendment to its LLC Agreement; only the Restricted Members have that right. It is also not apparent what interest, if any, Kind would have in the Preferred Members' mechanism for metering distributions amongst themselves.

---

[43] Kind LLC Agr. § 4.2(a).

[44] *Id.* § 7.3.

[45] Defs.' Supp. Answering Br. at 19.

17

Defendants argue in briefing that "this Court does not have jurisdiction to 'fashion equitable relief' to enforce the provisions of a New York limited liability company agreement.'"[46] This is irrelevant. Plaintiffs request for specific performance does not ask this court to enforce the provisions of a New York LLC agreement; rather, it asks this court to enforce the provisions of the Holdco LLC Agreement, which is a Delaware LLC.

Defendants also half-heartedly contend, in an argument relegated to a footnote, that interests of comity and the internal affairs doctrine weigh in favor of dismissal absent Kind in this court.[47] Defendants rely on *In re Coinmint, LLC* to support this contention.[48] In *Coinmint*, this court was tasked with deciding whether a Delaware court had jurisdiction to declare the membership of or dissolve an entity formed under the laws of Puerto Rico. In finding that it did not possess jurisdiction to do either, the court relied on precedent emphasizing the importance of vesting the power to determine the management and dissolution of an entity in the state that created the entity.[49] As to management, the court reasoned that Puerto Rico's courts' vested jurisdiction in deciding contested matters of management precluded a Delaware court's jurisdiction over that determination. As to dissolution, *Coinmint* limited its holding to finding that "only the courts of the jurisdiction

---

[46] *Id.* at 13.

[47] *Id.* at 4 n.4.

[48] 261 A.3d 867 (Del. Ch. 2021).

[49] *Id.* at 911.

18

under whose law the limited liability company is organized have the capacity to order its dissolution."[50]

This case is distinguishable from *Coinmint* on multiple fronts. Most importantly, granting Plaintiffs' requested relief would not require dissolution of a foreign entity. Further, Plaintiffs do not ask this court to impose Delaware law on Kind; instead, they ask this court to order action by members of Kind in enforcing those members' obligations under a Delaware LLC agreement. Finally, ordering specific performance would not require any change to Kind's management, membership, or even its discretion to issue distributions—it would only alter the recipients of those distributions and the amount of their receipts.

Finally, Defendants argue that Teller is only before this court in his capacity as a member and manager of Holdco, and therefore he cannot be ordered to take action to implement Plaintiffs' economic rights in his capacity as a member and manager of Kind.

For this point, both sides cite to *Godden v. Franco*.[51] That case involved a marine transportation company, HMS Inc., incorporated in Washington state and wholly owned by a series of Delaware LLCs.[52] Under the holding company structure, Holdco 3 sat at the top, and HMS, Inc. was at the bottom as the lowest-tier subsidiary.[53] The Holdco 3 LLC

---

[50] *Id.* at 913.

[51] 2018 WL 3998431 (Del. Ch. Aug. 21, 2018).

[52] Letter Requesting Supp. Briefing at 5–8; *Godden v. Franco*, 2018 WL 3998431, at *1–2 (Del. Ch. Aug. 21, 2018).

[53] *Godden*, 2018 WL 3998431 at *2.

agreement required that the boards of all its subsidiaries, including HMS, Inc., have the same composition as Holdco 3's board.[54] Two of the four members of Holdco 3's board of managers removed a third member, Harley Franco, by written consent. The two members then filed suit and moved for summary judgment seeking a declaration that, among other things, the written consent also obligated all parties to the Holdco 3 LLC agreement, including Franco, to implement that decision at the subsidiary level by removing Franco from the board of HMS, Inc.[55]

Vice Chancellor Laster declared that the provisions of the Holdco 3 LLC agreement bound "the parties contractually as a matter of Delaware law just as a stockholder agreement would" and that "[i]f the members of Holdco 3 change the composition of the Board of Managers, then the parties to the Holdco 3 LLC agreement have a contractual obligation . . . to take steps to implement that decision at the subsidiaries."[56] Those provisions, however, were "not self-executing."[57] Rather, "they require mechanisms by which stockholder-level decisions can be implemented under the governing documents of the entity."[58] *Godden* stopped short of ordering that HMS, Inc. replicate the board of directors consistent with the makeup of Holdco 3's board of managers under the Holdco 3

---

[54] *Id.* at *4.

[55] *Id.* at *1–2.

[56] *Id.* at *14.

[57] *Id.*

[58] *Id.*

LLC agreement, as such an order "could raise knotty issues under Washington law."[59] Specifically, ordering that the HMS, Inc. board implement the requirements under the Holdco 3 agreement may have implicated fiduciary duty breaches under Washington law.

Plaintiffs argue that *Godden* concerned different implementation rights that raise distinguishable issues of foreign state law. They contend that the implementation rights in *Godden* required determining who would manage a Washington entity, a matter that would potentially implicate the absent managers' fiduciary duties to the entity. This case, Plaintiffs argue, is fundamentally different because implementing Mehra's rights at the Kind level would not impact any exercise of managerial discretion—their proposed relief would not affect management's discretion to issue distributions or the total amount, just the recipients and their respective portions.

Defendants rely on *Godden* to argue that this court is obligated to respect corporate separateness and thus cannot order Teller to take action at Kind based on this court's interpretation of Mehra's rights under the Holdco LLC Agreement. They also argue that compliance with obligations imposed by the Holdco LLC Agreement could raise issues under New York law and is therefore beyond this court's jurisdiction.

Defendants' reading of *Godden* overstates that case's premise. The court in *Godden* did not hold that it could not order action at the subsidiary level; rather, it declined to reach the issue. The issue was not properly before the court, as the plaintiffs merely sought

---

[59] *Id.* at *15.

declaratory relief, not an order requiring implementation of the board composition at the HMS, Inc. level.

Defendants fail to identify how implementing the proposed amendments would implicate Teller's fiduciary obligations in any event. In *Godden*, the court noted that Washington law issues may arise "if Franco asserts that compliance would cause him to breach his fiduciary duties."[60] This informed the court's decision to decline to reach the question of whether a party to the Holdco 3 LLC agreement would be obligated to comply with obligations imposed by the agreement notwithstanding competing obligations.

Defendants have not pointed to similar competing obligations in this instance. They do point out that New York does not permit a complete waiver of fiduciary duties in limited liability entities.[61] Even so, they fail to identify how the proposed amendment could constitute a fiduciary breach under any foreseeable circumstances. Such circumstances are difficult to imagine, given that the proposed amendments would not alter the Kind board's discretion in deciding to make distributions and would only impact the recipients of those distributions. The mere existence of fiduciary liability under New York law, without some sort of nexus to liability that might actually arise from the proposed amendments, does not raise the same concerns as noted in *Godden*.

Defendants also cite to *Hamilton Partners, L.P. v. Englard* for the proposition that Teller cannot be compelled in this court to act in his capacity as a member and manager of

---

[60] *Id.*

[61] N.Y. Ltd. Liab. Co. Law § 417(a).

a foreign entity.[62]  In *Hamilton Partners*, the stockholder plaintiff brought a derivative claim in Delaware against the directors of a New York parent corporation.  Those directors were also the directors of the parent's Delaware subsidiary, and the stockholder plaintiff brought a double derivative claim against those directors in their capacity as directors of the Delaware subsidiary.  The directors moved to dismiss for lack of personal jurisdiction.  The court granted dismissal as to the derivative claim on behalf of the New York corporation, reasoning that the directors had no ties to Delaware aside from their service on the Delaware subsidiary's board.  This status was "irrelevant to a claim against them as directors of the New York parent."[63]

Defendants argue that the same result is warranted here because Teller's status as a member of Holdco is irrelevant to any obligations he may owe at Kind.  But this contention both misstates the source of Teller's obligations and overstates the reach of *Hamilton Partners*.  There, the plaintiff attempted to sue the directors derivatively in their capacity on the board of the New York parent.  Here, there is no derivative action.  Teller is in this court in his capacity as a signatory to the Holdco LLC Agreement.  Far from being "irrelevant" to his status as a member and manager of Kind, his role in the Holdco LLC Agreement forms the very basis for his obligations to implement Mehra's economic rights at Kind.  The concerns raised in *Hamilton Partners* as to Teller's role in this suit are thus inapplicable.

---

[62] 11 A.3d 1180, 1201 (Del. Ch. 2010).

[63] *Id.* at 1201.

In sum, this court has the authority to order Teller and his related entities to take action that specifically performs the obligations under the Holdco LLC Agreement, including amending the Kind LLC Agreement.

## B. Plaintiffs State A Claim For Breach Of Fiduciary Duty And Breach Of Contract.

In their opening brief, Defendants raised several arguments that were either resolved or abandoned by the time they filed their reply. First, they contend that the law of the case doctrine requires dismissal of Counts I and II for breach of contract and fiduciary breach claims. Second, they argue that Count II for breach of fiduciary duty should be dismissed because it is duplicative of Count I for breach of contract.

### 1. Law Of The Case

"The 'law of the case' doctrine requires that issues already decided by the same court should be adopted without relitigation, and 'once a matter has been addressed in a procedurally appropriate way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears.'"[64] Defendants argue that both Counts I and II have already been resolved by the Post-Trial Opinion and thus do not need to be relitigated.

As to Count I for breach of fiduciary duty, Defendants argue that "this Court has already determined that Teller did not breach his fiduciary duty by dissolving Holdco following a *bona fide* deadlock."[65] It is true that the Post-Trial Opinion resolved any

---

[64] *May v. Bigmar*, 838 A.2d 285, 288 n.8 (Del. Ch. 2003).

[65] Defs.' Reply Br. at 24.

24

fiduciary breach claim as to Teller's actions in declaring a deadlock and dissolving Holdco. The Post-Trial Opinion also rejected Plaintiffs' theory that Teller was solely motivated by a desire for liquidity in removing Mehra, and that Teller acted in good faith in both removing Mehra and in doing so without first confronting him.[66] That decision decided the "narrow question addressed in this trial" of whether Plaintiffs had proven bad faith sufficient to justify equitable invalidation of the Holdco dissolution.[67]

The Post-Trial Opinion, however, was focused on a narrow issue. Specifically, the Post-Trial Opinion only resolved whether Teller acted in bad faith as to Mehra's termination and the dissolution of Holdco. The decision did not produce any holding on any potential fiduciary breach Teller has committed by his failure to implement Mehra's economic rights following the dissolution. Count I alleges that Teller breached his fiduciary duty by "[e]xecuting a scheme to strip Mehra of his economic rights . . . including in the event of a deadlock dissolution."[68] That issue is still squarely before the court, and contrary to Defendants' assertion, has not been decided or resolved by the Post-Trial Opinion.

Defendants largely dropped their "law of the case" doctrine argument as to the breach of contract claim in Count II in their reply brief.[69] In its place, they argue that Kind

---

[66] Post-Trial Op. at 70.

[67] *Id.*

[68] Am. Compl. ¶ 81.

[69] *Compare* Defs.' Opening Br. at 10 ("[T]here is nothing left for a second trial of any contract claim."), *with* Defs.' Reply Br. at 19 (arguing only that Kind is a necessary party to the breach of contract claim).

is an indispensable party to the breach of contract claim, and therefore that Count II must be dismissed. The Post-Trial Opinion did rule on parts of the breach of contract claim, namely that Teller did not manufacture the deadlock in bad faith, failed to protect the interests of Holdco and its members, and failed to follow the proper procedures for a deadlock.[70] Although the Post-Trial Opinion found that that Teller breached the Holdco LLC Agreement by failing to give effect to the economic arrangements at the Kind level, it did not address other remedies for Teller's failure to replicate the Equal-Distribution Arrangement at Kind.[71] The court thus has not resolved this count in the Post-Trial Opinion, and deciding the appropriate remedy at a second trial would not require relitigating the issues.

In sum, the law of the case doctrine does not require dismissal of Counts I or II, and Defendants' motion is denied on this ground.

### 2. Duplicative Claims

The Amended Complaint alleges that Teller breached his fiduciary duties to Plaintiffs by failing to replicate the Holdco members' rights at the Kind level, despite his knowledge of this duty.

By default, managers of limited liability companies owe fiduciary duties akin to those of directors of a corporation.[72] Although Delaware law permits a limited liability

---

[70] Am. Compl. ¶ 87(a)–(d); Post-Trial Op. at 70.

[71] Am. Compl. ¶ 87(d); Post-Trial Op. 69–70.

[72] 6 *Del. C.* § 18-1104 ("In any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties . . . shall govern.").

26

company to eliminate fiduciary duties in the governing agreement,[73] the Holdco LLC Agreement does not do so.

Teller owed Holdco and its members a duty of loyalty, which "mandates that the best interest" of Holdco and its owners "takes precedence over any interest" he may have possessed personally.[74] "[B]ad faith conduct is a breach of the duty of loyalty . . . . "[75] Under Delaware law, a plaintiff can show bad faith by proving that a fiduciary "intentionally acts with a purpose other than that of advancing the best interests of the corporation," intentionally "acts with the intent to violate applicable positive law," or "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."[76]

Defendants contend that Count II must be dismissed because any remaining fiduciary breach claim is entirely duplicative of any remaining breach of contract claim in Count I. Plaintiffs are not precluded, however, from asserting claims for breach of fiduciary duty and breach of contract based on a "common nucleus of operative facts" if

---

[73] 6 *Del. C.* § 18-1101(e) ("A limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager, or other person to a limited liability company or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement . . . . ").

[74] *See Triple H. Fam. Ltd. P'rship v. Neal*, 2018 WL 3650242, at *18 (Del. Ch. July 31, 2018) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)).

[75] *See, e.g., Stewart v. BF Bolthouse Holdco, LLC*, 2013 WL 5210220, at *11 (Del. Ch. Aug. 30, 2013) ("It is now well-established . . . that the duty of loyalty encompasses more than interested transactions and also covers director actions taken in bad faith.").

[76] *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006).

the breach of fiduciary duty claims "depend on additional facts as well, are broader in scope, and involve different considerations in terms of a potential remedy."[77]

Teller's obligation to honor Plaintiffs' economic rights as Holdco members finds equal footing in his fiduciary obligations as Manager. Teller had a duty to put the interests of Holdco's owners above his own and to not take actions inimical to those interests. This includes dealing with Holdco's members fairly, regardless of their affiliations with Teller himself.

Yet Teller testified at the bifurcated trial to doing just the opposite. He admitted that he was not honoring the distribution agreement in the Holdco LLC Agreement, and that he knew that he had a fiduciary duty to do so.[78] Instead, Teller has made distributions to himself in the form of salary payments without regard for the distribution arrangement.

This case stands in stark contrast to Defendants' cited precedent, *Nemec v. Shrader*.[79] There, the plaintiffs were former employees of the defendant corporation who, upon their retirement, received put rights on their stock in the corporation that lasted for a period of two years. After the two-year period expired, the corporation had an unconditional redemption right to buy back the stock at book value. Following the

---

[77] *Schuss v. Penfield, P'rs, L.P.*, 2008 WL 2433842, at *10 (Del. Ch. June 13, 2008); *see also Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous.").

[78] Dkt. 202 at 690:5–10 (Teller).

[79] 991 A.2d 1120 (Del. 2010).

plaintiffs' retirement and the expiration of their put rights, the corporation negotiated a sale of one of its divisions that would reap massive gains for its stockholders. Before the sale went through, however, the corporation exercised its rights to redeem the plaintiffs' shares, with the result that the plaintiffs did not realize the value of the sale. The plaintiffs sought relief for breach of contract and breach of fiduciary duty. The Delaware Supreme Court affirmed this court's dismissal of the fiduciary claims because any stock rights they had were "solely a creature of contract."[80] As a result, "the nature and scope of the Directors' duties when causing the Company to exercise its right to redeem shares covered by the Stock Plan were intended to be defined solely by reference to that contract," not by duties the directors owed to stockholders writ large.[81]

Teller's conscious decision to withhold distributions from Plaintiffs in this case is different. For sure, Teller has a contractual obligation under Section 4.10 as a Holdco member to honor Plaintiffs' economic rights at the Kind level. Unlike the other Holdco members, however, Teller also has an obligation as a manager of Holdco to treat its members fairly and put their interests above his own. As a manager, Teller is also the only one in a position of power to ensure that Plaintiffs' rights are implemented following dissolution. Teller's knowing failure to honor Plaintiffs' interests above his own is the sort of above-and-beyond bad faith that extends Plaintiffs' fiduciary duty claim past the

---

[80] *Id.* at 1129.

[81] *Id.*

"common nucleus of operative facts" that form the basis of their contract claim. Defendants' motion to dismiss is denied on this ground.

## C. Additional Arguments As To Slover And Saltoun

Defendants additionally move to dismiss all claims against Slover and Saltoun under Court of Chancery Rules 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. The motion is granted as to Slover for lack of personal jurisdiction and denied as to Saltoun on both grounds.

### 1. Slover

Plaintiffs argue that this court has personal jurisdiction over Slover under Delaware's Long-Arm Statute based on the conspiracy theory of jurisdiction.[82] The conspiracy theory analysis requires evaluating Slover's aiding and abetting liability, so her 12(b)(6) motion is considered in tandem with the personal jurisdiction analysis.

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[83] "In ruling on a 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record," but where "no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction" on a record construed "in the light most favorable to the plaintiff."[84]

---

[82] Pls.' Answering Br. at 54–59.

[83] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[84] *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 800–01 (Del. Ch. 2020) (quoting *Ryan*, 935 A.2d at 265).

Delaware courts use a two-step analysis to resolve questions of personal jurisdiction.[85] First, the court must "determine that service of process is authorized by statute."[86] Second, the defendant must have certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[87]

Delaware's Long-Arm statute provides jurisdiction over a nonresident "who in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State . . . [or] [c]auses tortious injury in the State by an act or omission in this State."[88] "[A] single transaction is sufficient to confer jurisdiction where the claim is based on that transaction."[89] "Under the plain language of the Long-Arm Statute, forum-directed activity can be accomplished 'through an agent.'"[90]

The Delaware Supreme Court has adopted the conspiracy theory of jurisdiction, under which a person's co-conspirators are their agents, such that forum-directed activities by the co-conspirator can give rise to personal jurisdiction over all conspiracy members.[91]

---

[85] *Ryan*, 935 A.2d at 265.

[86] *Id.*

[87] *Matthew v. FläktWoods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

[88] 10 *Del. C.* § 3104(c).

[89] *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 978 (Del. Ch. 2000).

[90] *Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *11 (Del. Ch. Feb. 11, 2015) (quoting 10 *Del. C.* § 3104(c)).

[91] *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 222 (Del. 1982).

At the pleading stage, a plaintiff need not "produce direct evidence of a conspiracy" but must assert "specific facts from which one can reasonably infer that a conspiracy existed."[92]

The Delaware Supreme Court established the elements of the conspiracy theory of jurisdiction in *Istituto Bancario Italiano SpA v. Hunter Engineering Co.*:

> [A] conspirator who is absent from the forum state is subject to the jurisdiction of the court . . . if the plaintiff can make a factual showing that: (1) a conspiracy . . . existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[93]

The five elements of the *Istituto Bancario* test "functionally encompass both prongs of the jurisdictional test."[94] "The first three . . . elements address the statutory prong . . . . The fourth and fifth . . . elements address the constitutional prong . . . ."[95]

The first and second *Istituto Bancario* elements ask whether a conspiracy existed and whether the nonresidents were members of the conspiracy. "Although *Istituto Bancario* literally speaks in terms of a 'conspiracy to defraud,' the principle is not limited to that particular tort."[96]

---

[92] *Reid v. Siniscalchi*, 2014 WL 6589342, at *6 (Del. Ch. Nov. 20, 2014).

[93] *Perry v. Neupert*, 2019 WL 719000, at *22 (Del. Ch. Feb. 15, 2019) (quoting *Istituto Bancario*, 449 A.2d at 225).

[94] *Virtus*, 2015 WL 580553, at *12.

[95] *Id.*

[96] *Id.* at *13.

This court has recognized that aiding and abetting in a claim for breach of fiduciary duty can supply the relevant tort and are a "context-specific application of civil conspiracy law."[97]  Plaintiffs' arguments for personal jurisdiction over Slover, therefore, hinge on whether they have adequately alleged a claim for aiding and abetting.

There are four elements to an aiding and abetting claim: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach."[98]

Defendants argue generally that Count III for aiding and abetting must be dismissed if the predicate fiduciary breach claim is dismissed.  Since this decision has already found that the predicate fiduciary breach claim against Teller survives dismissal, this ancillary argument is without merit.

The claim against Teller for breaching his fiduciary obligations to Plaintiffs by failing to implement their economic rights at the Kind level remains live.  The question thus becomes the extent to which Plaintiffs have alleged that Slover knowingly participated in that breach.  Plaintiffs argue that Slover participated in Teller's fiduciary breach by assisting in drafting the documents that effectuated the dissolution without providing for Plaintiffs' rights to distributions at the Kind level.[99]  Plaintiffs present further evidence of Slover's involvement in their harm by drafting the documents assigning Preferred Interests

---

[97] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006).

[98] *Malpiedie v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

[99] Pls.' Answering Br. at 40.

in Kind to Plaintiffs without providing for their rights to distributions. Plaintiffs point to Slover's deposition testimony that she was aware of these obligations and that Teller was failing to honor them.[100]

Even assuming that the court may consider the discovery evidence for the purpose of resolving the Rule 12(b)(2) arguments, Plaintiffs have failed to demonstrate Slover's requisite knowledge and participation in Teller's alleged breached. As the story is alleged, Slover papered what Teller requested. It is very difficult to conclude that this act, standing alone, constituted knowing participation in fiduciary breach. While lawyers are not immune to such claims, one should be reticent to conclude that a lawyer's ministerial actions constitute knowing participation. On these grounds alone alone, Plaintiffs have failed to demonstrate a basis for exercising jurisdiction over Slover.

Plaintiffs' showing as to the third element of the conspiracy theory is likewise specious. The third element requires showing that Slover completed a substantial act or that a substantial effect in furtherance of the conspiracy occurred in Delaware. Generally speaking, to comport with Delaware's Long-Arm Statute, Slover must have taken some action that would give a causal nexus to this jurisdiction. Plaintiffs have not identified any such actions in this case. Plaintiffs note that Teller was required by Section 10.03 of the Holdco LLC Agreement to "cause the cancellation of the Certificate of Formation" if

---

[100] *Id.*

Holdco were dissolved,[101] but the certificate of cancellation was never filed.[102]  The mere

contractual obligation to file a certificate of cancellation in Delaware does not create a

sufficient contact with Delaware to satisfy the long-arm statute.   Further, Plaintiffs

maintain that Teller was the one who was required to file the certificate of cancellation, not

Slover.[103]   Plaintiffs do not offer any other basis to satisfy the third prong of *Istituto*

*Bancario*.

The fourth and fifth prongs similarly fail.  Absent a qualifying act directed at the

state of Delaware, Plaintiffs have no route to pleading that Slover had reason to know that

the nonexistent act would have an effect in this jurisdiction.  The conspiracy theory thus

fails to establish personal jurisdiction over Slover.  Slover's motion to dismiss under Rule

12(b)(2) is granted.

### 2.    Saltoun

Defendants argue that this court does not have jurisdiction over Saltoun as trustee

of the Teller Children's 2015 Trust.[104]   The requirement that a court have personal

---

[101] Holdco LLC Agr. § 10.03.

[102] Am. Compl. ¶¶ 50–51.

[103] *Id.*

[104] Saltoun arguably waived this defense by failing to raise this defense until the present motion to dismiss.  Under Court of Chancery Rule 12(h)(1), a defense of lack of personal jurisdiction "is waived (A) if omitted from a motion in the circumstances described in [Rule 12(g)]."  Ct. Ch. R. 12(h)(1).  In other words, if Saltoun failed to raise a defense of personal jurisdiction in his initial motion, then that defense is considered waived.  Saltoun filed an initial motion to dismiss in this action on January 2, 2020 under Rule 12(b)(6), but did not raise personal jurisdiction as a defense.  *See* Dkt. 72.

35

jurisdiction, however, is a waivable right.[105] "A defendant can agree to the court's exercise of personal jurisdiction."[106] That agreement can be express or implied.[107] When a party agrees to litigate in a forum, the party is considered to have implicitly consented to personal jurisdiction in that forum.[108] When a party has consented to jurisdiction, the court can forego the typical two-step analysis.[109]

Saltoun consented to this court's jurisdiction under Section 11.12 of the Holdco LLC Agreement. This section provides that, "Each Member by its execution hereof, hereby submits to the exclusive jurisdiction of, and consents to service of process and venue in, the state and federal courts of the State of Delaware in any action, suit or proceeding between or among the Members arising out of this Agreement."[110] As trustee to the Teller 2015 Children's Trust, a Member of Holdco, Saltoun is a proper representative of the trust's interests. Because this case arises from the Members' breach of their obligations under the Holdco LLC Agreement to implement Plaintiffs' economic rights at

---

[105] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

[106] *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at *10 (Del. Ch. Mar. 15, 2019) (collecting cases).

[107] *Id.* at *11.

[108] *Id.*; *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008) (citing *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999)).

[109] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019); R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corporations & Business Organizations*, §13.4 (3d ed. 2019) ("Consent to personal jurisdiction is considered a waiver of any objection on due process grounds and an analysis under minimum contacts is considered unnecessary.").

[110] Holdco LLC Agr. § 11.12.

the Kind level, Saltoun is subject to this court's jurisdiction for this action. Saltoun's motion to dismiss under Rule 12(b)(2) is denied.

Defendants' only basis for its remaining 12(b)(6) argument relies on the conclusion that, as a member of Holdco, Saltoun in his capacity as trustee for the Teller Children's 2015 Trust has no further obligations at the Holdco level and therefore no claims remain against him.[111] This conclusion requires a finding that there are no further claims at the Holdco level. This decision has already found that the Holdco Members can be held responsible in this jurisdiction for their failure to implement Plaintiffs' economic rights at the Kind level. As a result, the Complaint continues to state a claim against Saltoun, and his motion to dismiss is denied.

## III. CONCLUSION

Defendants' motion to dismiss as to Slover is granted for lack of personal jurisdiction. The remainder of the motion is denied. The parties are instructed to submit a form of order implementing this decision within ten business days.

---

[111] Defs.' Opening Br. at 23 ("As explained above, there are no remaining claims at the Holdco level, so there are no remaining claims against Saltoun."); Defs.' Reply Br. at 29 ("The Teller Trust was a member of Holdco prior to its dissolution, and no claims remain at the Holdco level.").